**BRADLEY/GROMBACHER, LLP**
Marcus J. Bradley, Esq. (SBN 174156)
Kiley Lynn Grombacher, Esq. (SBN 245960)
31365 Oak Crest Dr., Suite 240
Westlake Village, CA 91361
Telephone:  (805) 270-7100
E-mail:  mbradley@bradleygrombacher.com
          kgrombacher@bradleygrombacher.com

Attorneys for Plaintiff Peter Telford and the Proposed Class

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA, SAN DIEGO DIVISION

| | |
|---|---|
| PETER TELFORD, individually and behalf of all others similarly situated,<br><br>                    *Plaintiff,*<br><br>v.<br><br>AT&T, Inc.<br><br>                    *Defendant.* | CASE NO.:  '24 CV 0798 BEN SBC<br><br>**COMPLAINT - CLASS ACTION** |

COMES NOW, Plaintiff, Peter Telford, individually and behalf of all others similarly situated, who files this class action complaint against Defendant AT&T and alleges and avers as follows on personal knowledge, investigation, or information and belief.

## I. INTRODUCTION

1. Plaintiff brings this class action lawsuit against Defendant for failure to properly secure and safeguard sensitive information.

2. Defendant AT&T is one of the largest wireless carriers and internet providers in the country. Plaintiff's and Class Members' trusted Defendant with their sensitive personal information, including but not limited to full names, addresses, date of birth, phone numbers, and Social Security numbers (hereinafter, "personally identifiable information" or "PII") on the understanding that Defendant would protect it against disclosure.

3. Instead, that PII was targeted, compromised, and unlawfully accessed due to Defendants' lax security measures in or about March 2024, where the details of 73 million former and current AT&T Customer accounts, including full names, email addresses, mailing addresses, phone numbers, dates of birth, social security numbers, AT&T account number and passcode were leaked online (hereinafter, the "Data Breach").[1]

4. AT&T collected and maintained certain personally identifiable information and protected health information of Plaintiff and the putative Class Members (defined below), who are (or were) customers at Defendant.

5. The PII compromised in the Data Breach was exfiltrated by cyber-criminals and remains in the hands of those cyber-criminals who target PII for its value to identity thieves.

6. As a result of the Data Breach, Plaintiff and approximately 73 million Class Members (including 7.6 million current customers and 65.4 million former customers), suffered concrete injuries in fact including, but not limited to: (i) invasion

---

[1] https://www.nytimes.com/2024/03/30/business/att-passcodes-reset-data-breach.html.

CLASS ACTION COMPLAINT

of privacy; (ii) theft of their PII; (iii) lost or diminished value of PII; (iv) uncompensated lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) statutory damages; (viii) nominal damages; and (ix) the continued and certainly increased risk to their PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII.

7.    The Data Breach was a direct result of Defendant's failure to implement adequate and reasonable cyber-security procedures and protocols necessary to protect consumers' PII from a foreseeable and preventable cyber-attack.

8.    Moreover, upon information and belief, Defendant was targeted for a cyber-attack due to its status as a telecom company that collects and maintains highly valuable PII on its systems.

9.    Defendant maintained, used, and shared the PII in a reckless manner. In particular, the PII was used and transmitted by Defendant in a condition vulnerable to cyberattacks. Upon information and belief, the mechanism of the cyberattack and potential for improper disclosure of Plaintiff's and Class Members' PII was a known risk to Defendant, and thus, Defendant was on notice that failing to take steps necessary to secure the PII from those risks left that property in a dangerous condition.

10.    Defendant disregarded the rights of Plaintiff and Class Members by, inter alia, intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure its data systems were protected against unauthorized intrusions; failing to take standard and reasonably available steps to prevent the Data Breach; and failing to provide Plaintiff and Class Members prompt and accurate notice of the Data Breach.

CLASS ACTION COMPLAINT

11.    Plaintiff's and Class Members' PII, finances, and identities are now at risk because of Defendant's negligent conduct because the PII that Defendant collected and maintained has been accessed and acquired by data thieves.

12.    Armed with the PII accessed in the Data Breach, data thieves have already engaged in identity theft and fraud and can in the future commit a variety of crimes including, *e.g.*, opening new financial accounts in Class Members' names, taking out loans in Class Members' names, using Class Members' information to obtain government benefits, filing fraudulent tax returns using Class Members' information, obtaining driver's licenses in Class Members' names but with another person's photograph, and giving false information to police during an arrest.

13.    As a result of the Data Breach, Plaintiff and Class Members have been exposed to a heightened and imminent risk of fraud and identity theft. Plaintiff and Class Members must now and in the future closely monitor their financial accounts to guard against identity theft.

14.    Plaintiff and Class Members may also incur out of pocket costs, e.g., for purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft.

15.    Plaintiff brings this class action lawsuit on behalf all those similarly situated to address Defendant's inadequate safeguarding of Class Members' PII that it collected and maintained, and for failing to provide timely and adequate notice to Plaintiff and other Class Members that their information had been subject to the unauthorized access by an unknown third party and precisely what specific type of information was accessed.

16.    Plaintiff seeks to remedy these harms on behalf of himself and all similarly situated individuals whose PII was accessed during the Data Breach.

17.    Plaintiff brings this action for economic damages and injunctive relief on behalf of all persons whose driver behavior data were captured, collected, stored, and/or transferred or sold without full notice or consent.  Defendants' wrongful conduct

CLASS ACTION COMPLAINT

constitutes a violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, et seq. (Count I); tortious interference with drivers' relations with their automobile insurers (Count II); common law invasion of privacy (Count III); unjust enrichment (Count IV); and violations of state consumer protection laws including California's Invasion of Privacy Act ("CIPA"), Cal. Pen. Code §§ 630, et seq (Count V), California's Constitutional Right to Privacy (Count VI), California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, et seq. (Count VII), and California's Unfair Competition Law ("UCL"), California Business & Professions Code § 17200, et seq. (Count VIII).

## II.  <u>JURISDICTION AND VENUE</u>

18.    This Court has original jurisdiction pursuant to the 28 U.S.C. § 1331 by virtue of Count I arising out of or relating to the FCRA.

19.    This Court also has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because (a) at least one member of the proposed class is a citizen of a state different from that of Defendant, (b) the amount in controversy exceeds $5,000,000.00 (5 million dollars), exclusive of interests and costs, (c) the proposed class consists of more than 100 class members, and (d) none of the exceptions under the subsection apply to this action. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

20.    This Court has personal jurisdiction over Defendant pursuant to 28 U.S.C. § 1407, and because Defendant has otherwise intentionally availed itself of the markets within California through business activities, such that the exercise of jurisdiction by this Court is proper and necessary. Defendant has substantial aggregate contacts throughout the United States, the state of California, and this District.  Defendant has engaged, and continue to engage, in conduct that has a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons throughout the United States, the state of California, and this District, and Defendant has purposely availed itself of the laws of the United States and the State of California.

21.     Defendant has availed itself of the rights and benefits of the State of California by engaging in activities including (i) directly and/or through its affiliates and agents providing services in this judicial district and abroad; (ii) conducting substantial business in this forum; (iii) having a registered agent to accept service of process in the State of California; and/or (iv) engaging in other persistent courses of conduct and/or deriving revenue from services provided in California and in this Judicial District.

22.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## III.    PARTIES

23.     Defendant AT&T is a corporation organized under the state laws of Delaware with its headquarters and principal place of business in Dallas, Texas.  AT&T conducts substantial business in the state of California and has availed itself of the laws of California.

24.     Plaintiff Peter Telford is natural person and a citizen of San Diego, California.  Plaintiff is a Data Breach victim and received a Notice of Data Breach Email informing him that his full name, email address, mailing address, phone number, social security number, date of birth, AT&T account number, and password were compromised in the Data Breach.  Plaintiff subsequently received an alert from MyIDCare identity monitoring advising him of the same.  Since the Data Breach, Plaintiff has been informed of at least two credit cards being fraudulently taken out using his PII.

## IV.    FACTUAL ALLEGATIONS

### a.    Defendant AT&T

25.     Defendant AT&T is one of the largest wireless carriers and internet providers in the country.

---

CLASS ACTION COMPLAINT

26.    Plaintiff and Class Members are current and former customers of Defendant's.

27.    In the course of their relationship, customers, including Plaintiff and Class Members, provided Defendant with at least the following: names, dates of birth, phone numbers, Social Security numbers, and other sensitive information.

28.    Upon information and belief, in the course of collecting PII from customers, including Plaintiff, Defendant promised to provide confidentiality and adequate security for the data it collected from customers through its applicable privacy policy and through other disclosures in compliance with statutory privacy requirements.

29.    Defendant provides on its website:

> We work hard to safeguard your information using technology controls and organizational controls. We protect our computer storage and network equipment. We require employees to authenticate themselves to access sensitive data. We limit access to personal information to the people who need access for their jobs. And we require callers and online users to authenticate themselves before we provide account information.[2]

30.    Plaintiff and the Class Members, as customers, relied on these promises and on this sophisticated business entity to keep their sensitive PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information. Consumers, in general, demand security to safeguard their PII, especially when their Social Security numbers and other sensitive PII is involved.

**b.    The Data Breach**

31.    On or about March 2024, the details of 73 million former and current AT&T Customer accounts, including full names, email addresses, mailing addresses, phone numbers, dates of birth, social security numbers, AT&T account number and passcode were leaked online in the Data Breach.

32.    "Details of the leaked data first appeared online in August 2021, when a

---

[2] https://about.att.com/privacy/privacy-notice.html.

CLASS ACTION COMPLAINT

known threat actor, ShinyHunters, offered up the records for sale on a hacking forum, with a 'buy it now' price of one million dollars."[3] In March 2024, "that same data appears to have been made available for free by another threat actor, MajorNelson."[4]

33.    Defendant had obligations created by the FTC Act, contract, common law, and industry standards to keep Plaintiff's and Class Members' PII confidential and to protect it from unauthorized access and disclosure.

34.    Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive information they were maintaining for Plaintiff and Class Members, causing the exposure of PII, such as encrypting the information or deleting it when it is no longer needed.

35.    The attacker accessed and acquired files Defendant shared with a third party containing unencrypted PII of Plaintiff and Class Members. Plaintiff's and Class Members' PII was accessed and stolen in the Data Breach.

36.    Plaintiff further believes that his PII and that of Class Members was subsequently sold on the dark web following the Data Breach, as that is the modus operandi of cybercriminals that commit cyber-attacks of this type.

37.    Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive information they were maintaining for Plaintiff and Class Members, causing the exposure of PII, such as encrypting the information or deleting it when it is no longer needed.

38.    Defendant could have prevented this Data Breach by, among other things, properly encrypting or otherwise protecting their equipment and computer files containing PII.

39.    As explained by the Federal Bureau of Investigation, "[p]revention is the most effective defense against ransomware and it is critical to take precautions for protection."[5]

---

[3] ttps://www.nytimes.com/2024/03/30/business/att-passcodes-reset-data-breach.html.
[4] *Id.*
[5] How to Protect Your Networks from RANSOMWARE, at 3, available at: https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view.

40. To prevent and detect cyber-attacks and/or ransomware attacks, Defendant could and should have implemented, as recommended by the United States Government, the following measures:

Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

Enable strong spam filters to prevent phishing emails from reaching the end users and

authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

Configure firewalls to block access to known malicious IP addresses.

Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.

Set anti-virus and anti-malware programs to conduct regular scans automatically.

Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

Configure access controls—including file, directory, and network share permissions— with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.

Disable macro scripts from office files transmitted via email.

Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

CLASS ACTION COMPLAINT

Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

Consider disabling Remote Desktop protocol (RDP) if it is not being used.

Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

Execute operating system environments or specific programs in a virtualized environment.

Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.[6]

41.     To prevent and detect cyber-attacks or ransomware attacks, Defendant could and should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

**Secure internet-facing assets**
Apply latest security updates
Use threat and vulnerability management
Perform regular audit; remove privileged credentials

**Thoroughly investigate and remediate alerts**
Prioritize and treat commodity malware infections as potential full compromise

**Include IT Pros in security discussions**
Ensure collaboration among [security operations], [security admins], and [information technology] admins to configure servers and other endpoints securely

**Build credential hygiene**
Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords

---

[6] *Id.* at 3-4.

CLASS ACTION COMPLAINT

**Apply principle of least-privilege**
Monitor for adversarial activities
Hunt for brute force attempts
Monitor for cleanup of Event Logs
Analyze logon events.

**Harden infrastructure**
Use Windows Defender Firewall
Enable tamper protection
Enable cloud-delivered protection
Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office [Visual Basic for Applications].[7]

42.    Given that Defendant was storing the PII of its current and former customers, Defendant could and should have implemented all of the above measures to prevent and detect cyberattacks.

43.    The occurrence of the Data Breach indicates that Defendant failed to adequately implement one or more of the above measures to prevent cyberattacks, resulting in the Data Breach and data thieves acquiring and accessing the PII of more than seventy million individuals, including that of Plaintiff and Class Members

**c.    Defendant Acquires, Collects, and Stores its Customers' PII.**

44.    Defendant acquires, collects, and stores a massive amount of PII on its current and former customers.

45.    As a condition of obtaining products and/or services from Defendant, Defendant requires that customers and other personnel entrust it with highly sensitive personal information.

46.    By obtaining, collecting, and using Plaintiff's and Class Members' PII, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' PII from disclosure.

---

[7] *See* Human-operated ransomware attacks: A preventable disaster (Mar 5, 2020), available at: https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-apreventable-disaster/.

47.     Plaintiff and the Class Members have taken reasonable steps to maintain the confidentiality of their PII and would not have entrusted it to Defendant absent a promise to safeguard that information.

48.     Upon information and belief, in the course of collecting PII from customers, including Plaintiff, Defendant promised to provide confidentiality and adequate security for their data through its applicable privacy policy and through other disclosures in compliance with statutory privacy requirements.

49.     Indeed, Defendant provides on its website that:

> We work hard to safeguard your information using technology controls and organizational controls. We protect our computer storage and network equipment. We require employees to authenticate themselves to access sensitive data. We limit access to personal information to the people who need access for their jobs. And we require callers and online users to authenticate themselves before we provide account information.[8]

50.     Plaintiff and the Class Members relied on Defendant to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

### d.     Defendant Knew or Should Have Known of the Risk Because it is Particularly Susceptible to Cyber Attacks.

51.     Defendant's data security obligations were particularly important given the substantial increase in cyber-attacks and/or data breaches targeting telecom companies that collect and store PII, like Defendant, preceding the date of the breach.

52.     Data breaches, including those perpetrated against telecom companies that store PII in their systems, have become widespread.

53.     In the third quarter of the 2023 fiscal year alone, 7333 organizations experienced data breaches, resulting in 66,658,764 individuals' personal information being compromised.[9]

---

[8] https://about.att.com/privacy/privacy-notice.html.
[9] *See* https://www.idtheftcenter.org/publication/q3-data-breach-2023-analysis/.

CLASS ACTION COMPLAINT

54.    In light of recent high profile data breaches at other industry leading companies, including, Microsoft (250 million records, December 2019), Wattpad (268 million records, June 2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January 2020), Whisper (900 million records, March 2020), and Advanced Info Service (8.3 billion records, May 2020), Defendant knew or should have known that the PII that they collected and maintained would be targeted by cybercriminals.

55.    Indeed, cyber-attacks, such as the one experienced by Defendant, have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service have issued a warning to potential targets, so they are aware of, and prepared for, a potential attack. As one report explained, smaller entities that store PII are "attractive to ransomware criminals…because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[10]

56.    Additionally, as companies became more dependent on computer systems to run their business,[11] e.g., working remotely as a result of the Covid-19 pandemic, and the Internet of Things ("IoT"), the danger posed by cybercriminals is magnified, thereby highlighting the need for adequate administrative, physical, and technical safeguards.[12]

57.    Defendant knew and understood unprotected or exposed PII in the custody of insurance companies, like Defendant, is valuable and highly sought after by nefarious third parties seeking to illegally monetize that PII through unauthorized access.

58.    At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding the PII of Plaintiff and Class Members and of the foreseeable consequences that would occur if Defendant's data security system was

---

[10] https://www.law360.com/consumerprotection/articles/1220974/fbi-secret-service-warn-oftargeted-ransomware?nl_pk=3ed44a08-fcc2-4b6c-89f0-aa0155a8bb51&utm_source=newsletter&utm_medium=email&utm_campaign=consumerprotection.
[11] https://www.federalreserve.gov/econres/notes/feds-notes/implications-of-cyber-risk-forfinancial-stability-20220512.html
[12] https://www.picussecurity.com/key-threats-and-cyber-risks-facing-financial-services-andbanking-firms-in-2022.

CLASS ACTION COMPLAINT

breached, including, specifically, the significant costs that would be imposed on Plaintiff and Class Members as a result of a breach.

59.    Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

60.    The injuries to Plaintiff and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the PII of Plaintiff and Class Members.

61.    The ramifications of Defendant's failure to keep secure the PII of Plaintiff and Class Members are long lasting and severe. Once PII is stolen—particularly Social Security numbers and PHI—fraudulent use of that information and damage to victims may continue for years.

62.    As a telecom company in custody of the PII of its customers, Defendant knew, or should have known, the importance of safeguarding PII entrusted to it by Plaintiff and Class Members, and of the foreseeable consequences if its data security systems were breached. This includes the significant costs imposed on Plaintiff and Class Members as a result of a breach. Defendant failed, however, to take adequate cybersecurity measures to prevent the Data Breach.

**e.    Value and Use of PII**

63.    ABC The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[13]

64.    The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien

---

[13] 17 C.F.R. § 248.201 (2013).

CLASS ACTION COMPLAINT

registration number, government passport number, employer or taxpayer identification number."[14]

65.    The PII of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials.[15]

66.    For example, Personal Information can be sold at a price ranging from $40 to $200. [16] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[17]

67.    Moreover, Social Security numbers are among the worst kind of PII to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change.

68.    According to the Social Security Administration, each time an individual's Social Security number is compromised, "the potential for a thief to illegitimately gain access to bank accounts, credit cards, driving records, tax and employment histories and other private information increases."[18] Moreover, "[b]ecause many organizations still use SSNs as the primary identifier, exposure to identity theft and fraud remains."[19]

69.    The Social Security Administration stresses that the loss of an individual's Social Security number, as experienced by Plaintiff and some Class Members, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your

---

[14] *Id.*
[15] *Your personal data is for sale on the dark web. Here's how much it costs*, Digital Trends, Oct. 16, 2019, available at: https://www.digitaltrends.com/computing/personal-data-sold-on-the-darkweb-how-much-it-costs/.
[16] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, available at: https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/
[17] *In the Dark*, VPNOverview, 2019, available at: https://vpnoverview.com/privacy/anonymousbrowsing/in-the-dark/
[18] *See* https://www.ssa.gov/phila/ProtectingSSNs.htm#:~:text=An%20organization's%20collection%20and%20use,and%20other%20private%20information%20increases.
[19] *Id.*

credit. You may not find out that someone is using your number until
you're turned down for credit, or you begin to get calls from unknown
creditors demanding payment for items you never bought. Someone
illegally using your Social Security number and assuming your
identity can cause a lot of problems.[20]

70.    In fact, "[a] stolen Social Security number is one of the leading causes of
identity theft and can threaten your financial health."[21] "Someone who has your SSN
can use it to impersonate you, obtain credit and open bank accounts, apply for jobs,
steal your tax refunds, get medical treatment, and steal your government benefits."[22]

71.    What's more, it is no easy task to change or cancel a stolen Social Security
number. An individual cannot obtain a new Social Security number without significant
paperwork and evidence of actual misuse. In other words, preventive action to defend
against the possibility of misuse of a Social Security number is not permitted; an
individual must show evidence of actual, ongoing fraud activity to obtain a new number.

72.    Even then, a new Social Security number may not be effective. According
to Julie Ferguson of the Identity Theft Resource Center, "[t]he credit bureaus and banks
are able to link the new number very quickly to the old number, so all of that old bad
information is quickly inherited into the new Social Security number."[23]

73.    For these reasons, some courts have referred to Social Security numbers
as the "gold standard" for identity theft. *Portier v. NEO Tech. Sols*., No. 3:17-CV-
30111, 2019 WL 7946103, at *12 (D. Mass. Dec. 31, 2019) ("Because Social Security
numbers are the gold standard for identity theft, their theft is significant . . . . Access to
Social Security numbers causes long-lasting jeopardy because the Social Security
Administration does not normally replace Social Security numbers."), report and
recommendation adopted, No. 3:17-CV-30111, 2020 WL 877035 (D. Mass. Jan. 30,

---

[20]
[21] *See* https://www.equifax.com/personal/education/identity-theft/articles/-/learn/social-securitynumber-identity-theft/.
[22] See https://www.investopedia.com/terms/s/ssn.asp.
[23] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR
(Feb. 9, 2015), available at: http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-shackers-
has-millionsworrying-about-identity-theft.

CLASS ACTION COMPLAINT

2020); *see also McFarlane v. Altice USA, Inc.*, 2021 WL 860584, at *4 (citations omitted) (S.D.N.Y. Mar. 8, 2021) (the court noted that Plaintiffs' Social Security numbers are: arguably "the most dangerous type of personal information in the hands of identity thieves" because it is immutable and can be used to "impersonat[e] [the victim] to get medical services, government benefits, ... tax refunds, [and] employment." . . . Unlike a credit card number, which can be changed to eliminate the risk of harm following a data breach, "[a] social security number derives its value in that it is immutable," and when it is stolen it can "forever be wielded to identify [the victim] and target him in fraudulent schemes and identity theft attacks.").

74.    Similarly, the California state government warns consumers that: "[o]riginally, your Social Security number (SSN) was a way for the government to track your earnings and pay you retirement benefits. But over the years, it has become much more than that. It is the key to a lot of your personal information. With your name and SSN, an identity thief could open new credit and bank accounts, rent an apartment, or even get a job."[24]

75.    Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change—Social Security numbers, dates of birth, and names.

76.    This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[25]

---

[24] *See* https://oag.ca.gov/idtheft/facts/your-ssn
[25] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, (Feb. 6, 2015), available at: https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10xprice-of-stolen-credit-card-numbers.html.

CLASS ACTION COMPLAINT

77.    Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

78.    The fraudulent activity resulting from the Data Breach may not come to light for years. There may be a time lag between when harm occurs versus when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[26]

79.    Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

### f.    Defendant Fails to Comply with FTC Guidelines.

80.    The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

81.    In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cyber-security guidelines for businesses. These guidelines note that businesses should protect the personal consumer information that they keep; properly dispose of personal information that is no longer

---

[26] *Report to Congressional Requesters*, GAO, at 29 (June 2007), available at: https://www.gao.gov/assets/gao-07-737.pdf

CLASS ACTION COMPLAINT

1  needed; encrypt information stored on computer networks; understand their network's
2  vulnerabilities; and implement policies to correct any security problems.[27]

3      82.    The guidelines also recommend that businesses use an intrusion detection
4  system to expose a breach as soon as it occurs; monitor all incoming traffic for activity
5  indicating someone is attempting to hack the system; watch for large amounts of data
6  being transmitted from the system; and have a response plan ready in the event of a
7  breach.[28]

8      83.    The FTC further recommends that companies not maintain PII longer than
9  is needed for authorization of a transaction; limit access to sensitive data; require
10 complex passwords to be used on networks; use industry-tested methods for security;
11 monitor for suspicious activity on the network; and verify that third-party service
12 providers have implemented reasonable security measures.

13     84.    The FTC has brought enforcement actions against businesses for failing to
14 adequately and reasonably protect consumer data, treating the failure to employ
15 reasonable and appropriate measures to protect against unauthorized access to
16 confidential consumer data as an unfair act or practice prohibited by Section 5 of the
17 Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these
18 actions further clarify the measures businesses must take to meet their data security
19 obligations.

20     85.    These FTC enforcement actions include actions against telecom
21 companies, like Defendant.

22     86.    Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices
23 in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair
24 act or practice by businesses, such as Defendant, of failing to use reasonable measures
25 to protect PII. The FTC publications and orders described above also form part of the
26 basis of Defendant's duty in this regard.

27

28

---

[27] *Protecting Personal Information: A Guide for Business*, Federal Trade Commission (2016). Available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_protetingpersonal-information.pdf.
[28] *Id.*

CLASS ACTION COMPLAINT

87.    Defendant failed to properly implement basic data security practices. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to the PII of its customers or to comply with applicable industry standards constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

88.    Upon information and belief, AT&T was at all times fully aware of its obligation to protect the PII of its customers, AT&T was also aware of the significant repercussions that would result from its failure to do so. Accordingly, Defendant's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

**g.    Defendant Failed to Comply with Industry Standards.**

89.    As noted above, experts studying cyber security routinely identify telecom companies in possession of PII as being particularly vulnerable to cyberattacks because of the value of the PII which they collect and maintain.

90.    Several best practices have been identified that, at a minimum, should be implemented by telecom companies in possession of PII, like Defendant, including but not limited to: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data and limiting which employees can access sensitive data. AT&T failed to follow these industry best practices, including a failure to implement multi-factor authentication.

91.    Other best cybersecurity practices that are standard for telecom companies include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points. AT&T failed to follow these cybersecurity best

practices, including failure to train staff.

92.    Upon information and belief Defendant failed to meet the minimum standards of one or more of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

93.    These foregoing frameworks are existing and applicable industry standards for telecom companies, and upon information and belief, Defendant failed to comply with at least one—or all—of these accepted standards, thereby opening the door to the threat actor and causing the Data Breach.

**h.    Common Injuries and Damages**

94.    As a result of Defendant's ineffective and inadequate data security practices, the Data Breach, and the foreseeable consequences of PII ending up in the possession of criminals, the risk of identity theft to the Plaintiff and Class Members has materialized and is imminent, and Plaintiff and Class Members have all sustained actual injuries and damages, including: invasion of privacy; theft of their PII; uncompensated lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; loss of benefit of the bargain; lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; statutory damages; nominal damages; and the continued and certainly increased risk to their PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII.

**i.    Data Breaches Increase Victims' Risk of Identity Theft.**

95.    The unencrypted PII of Class Members will end up for sale on the dark

1  web as that is the modus operandi of hackers.

2      96.    Unencrypted PII may also fall into the hands of companies that will use

3  the detailed PII for targeted marketing without the approval of Plaintiff and Class

4  Members. Simply put, unauthorized individuals can easily access the PII of Plaintiff

5  and Class Members.

6      97.    The link between a data breach and the risk of identity theft is simple and

7  well established. Criminals acquire and steal PII to monetize the information. Criminals

8  monetize the data by selling the stolen information on the black market to other

9  criminals who then utilize the information to commit a variety of identity theft related

10  crimes discussed below.

11      98.    Plaintiff's and Class Members' PII is of great value to hackers and cyber

12  criminals, and the data stolen in the Data Breach has been used and will continue to be

13  used in a variety of sordid ways for criminals to exploit Plaintiff and Class Members

14  and to profit off their misfortune.

15      99.    Due to the risk of one's Social Security number being exposed, state

16  legislatures have passed laws in recognition of the risk: "[t]he social security number

17  can be used as a tool to perpetuate fraud against a person and to acquire sensitive

18  personal, financial, medical, and familial information, the release of which could cause

19  great financial or personal harm to an individual.

20      100.   While the social security number was intended to be used solely for the

21  administration of the federal Social Security System, over time this unique numeric

22  identifier has been used extensively for identity verification purposes[.]"[29]

23      101.   Moreover, "SSNs have been central to the American identity infrastructure

24  for years, being used as a key identifier[.] . . . U.S. banking processes have also had

25  SSNs baked into their identification process for years. In fact, SSNs have been the gold

26  standard for identifying and verifying the credit history of prospective customers."[30]

27

28

---

[29] *See* N.C. Gen. Stat. § 132-1.10(1).
[30] *See* https://www.americanbanker.com/opinion/banks-need-to-stop-relying-on-social-securitynumbers.

CLASS ACTION COMPLAINT

102. "Despite the risk of fraud associated with the theft of Social Security numbers, just five of the nation's largest 25 banks have stopped using the numbers to verify a customer's identity after the initial account setup[.]"[31] Accordingly, since Social Security numbers are frequently used to verify an individual's identity after logging onto an account or attempting a transaction, "[h]aving access to your Social Security number may be enough to help a thief steal money from your bank account"[32]

103. One such example of criminals piecing together bits and pieces of compromised PII for profit is the development of "Fullz" packages.[33]

104. With "Fullz" packages, cyber-criminals can cross-reference two sources of PII to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals.

105. The development of "Fullz" packages means here that the stolen PII from the Data Breach can easily be used to link and identify it to Plaintiff's and Class Members' phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII that was exfiltrated in the Data Breach, criminals may still easily create a Fullz package and sell it at a higher price to

---

[31] *See* https://archive.nytimes.com/bucks.blogs.nytimes.com/2013/03/20/just-5-banks-prohibituse-of-social-security-numbers/.
[32] See https://www.credit.com/blog/5-things-an-identity-thief-can-do-with-your-social-securitynumber-108597/.
[33] "Fullz" is fraudster speak for data that includes the information of the victim, including, but not limited to, the name, address, credit card information, social security number, date of birth, and more. As a rule of thumb, the more information you have on a victim, the more money that can be made off of those credentials. Fullz are usually pricier than standard credit card credentials, commanding up to $100 per record (or more) on the dark web. Fullz can be cashed out (turning credentials into money) in various ways, including performing bank transactions over the phone with the required authentication details in-hand. Even "dead Fullz," which are Fullz credentials associated with credit cards that are no longer valid, can still be used for numerous purposes, including tax refund scams, ordering credit cards on behalf of the victim, or opening a "mule account" (an account that will accept a fraudulent money transfer from a compromised account) without the victim's knowledge. See, e.g., Brian Krebs, Medical Records for Sale in Underground Stolen From Texas Life Insurance Firm, Krebs on Security (Sep. 18, 2014), https://krebsonsecuritv.com/2014/09/medical-records-for-sale-in-underground-stolen-from-texaslife-insurance-](https://krebsonsecuritv.com/2014/09/medical-records-for-sale-in-undergroundstolen- from-texas-life-insurance-finn/

unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over.

106. The existence and prevalence of "Fullz" packages means that the PII stolen from the data breach can easily be linked to the unregulated data (like insurance information) of Plaintiff and the other Class Members.

107. Thus, even if certain information (such as insurance information) was not stolen in the data breach, criminals can still easily create a comprehensive "Fullz" package. Then, this dossier can be sold—and then resold in perpetuity—to crooked operators and other criminals (like illegal and scam telemarketers).

### ii. Loss of Time to Mitigate the Risk of Identity Theft and Fraud

108. As a result of the recognized risk of identity theft, when a Data Breach occurs, and an individual is notified by a company that their PII was compromised, as in this Data Breach, the reasonable person is expected to take steps and spend time to address the dangerous situation, learn about the breach, and otherwise mitigate the risk of becoming a victim of identity theft of fraud. Failure to spend time taking steps to review accounts or credit reports could expose the individual to greater financial harm – yet the resource and asset of time has been lost.

109. Plaintiff and Class Members have spent, and will spend additional time in the future, on a variety of prudent actions, such as researching and verifying the legitimacy of the Data Breach and monitoring his own known and potential identity theft activity. Accordingly, the Data Breach has caused Plaintiff and Class Members to suffer actual injury in the form of uncompensated lost time—which cannot be recaptured—spent on mitigation activities.

110. Plaintiff's mitigation efforts are consistent with the U.S. Government Accountability Office that released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and

CLASS ACTION COMPLAINT

1    time to repair the damage to their good name and credit record."[34]

2        111.    110. Plaintiff's mitigation efforts are also consistent with the steps that

3    FTC recommends that data breach victims take several steps to protect their personal

4    and financial information after a data breach, including: contacting one of the credit

5    bureaus to place a fraud alert (consider an extended fraud alert that lasts for seven years

6    if someone steals their identity), reviewing their credit reports, contacting companies to

7    remove fraudulent charges from their accounts, placing a credit freeze on their credit,

8    and correcting their credit reports.[35]

9        112.    And for Plaintiff, as well as those other Class Members who have

10    experienced actual identity theft and fraud, the United States Government

11    Accountability Office released a report in 2007 regarding data breaches ("GAO

12    Report") in which it noted that victims of identity theft will face "substantial costs and

13    time to repair the damage to their good name and credit record."[36]

14        ### iii.  Future Cost of Credit and Identity Theft Monitoring is

15        ### Reasonable and Necessary

16        113.    Given the type of targeted attack in this case, sophisticated criminal

17    activity, and the type of PII involved, there is a strong probability that entire batches of

18    stolen information have been placed, or will be placed, on the black market/dark web

19    for sale and purchase by criminals intending to utilize the PII for identity theft crimes –

20    e.g., opening bank accounts in the victims' names to make purchases or to launder

21    money; file false tax returns; take out loans or lines of credit; or file false unemployment

22    claims.

23        114.    Such fraud may go undetected until debt collection calls commence

24    months, or even years, later. An individual may not know that his or her PII was used

---

[34] See United States Government Accountability Office, GAO-07-737, *Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown* (June 2007), https://www.gao.gov/new.items/d07737.pdf.

[35] See Federal Trade Commission, Identity Theft.gov, https://www.identitytheft.gov/Steps.

[36] See "*Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*," p. 2, U.S. Government Accountability Office, June 2007, https://www.gao.gov/new.items/d07737.pdf ("GAO Report").

CLASS ACTION COMPLAINT

to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud.

115.   Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

116.   Consequently, Plaintiff and Class Members are at an increased risk of fraud and identity theft for many years into the future.

117.   The retail cost of credit monitoring and identity theft monitoring can cost around $200 a year per Class Member. This is reasonable and necessary cost to monitor and to protect Class Members from the risk of identity theft that arose from Defendant's Data Breach.

### iv.   Loss of Benefit of the Bargain

118.   Defendant's poor data security practices deprived Plaintiff and Class Members of the benefit of their bargain. When agreeing to pay Defendant and/or its agents for products and/or services, Plaintiff and other reasonable consumers understood and expected that they were, in part, paying for the product and/or service and necessary data security to protect the PII, when in fact, Defendant did not provide the expected data security. Accordingly, Plaintiff and Class Members received products and/or services that were of a lesser value than what they reasonably expected to receive under the bargains they struck with Defendant.

### i.   Plaintiff's Facts

119.   Plaintiff is an AT&T customer.

120.   As a condition of obtaining products and/or services at AT&T, Plaintiff was required to provide his PII to Defendant, including his name, date of birth, phone number, Social Security number, and other sensitive information.

121.   Upon information and belief, at the time of the Data Breach, Defendant maintained Plaintiff's PII in its system.

122.   Plaintiff would not have entrusted his PII to Defendant had he known of Defendant's lax data security policies.

CLASS ACTION COMPLAINT

123.    Upon information and belief, Plaintiff's PII was improperly accessed and obtained by unauthorized third parties, including his name, address, phone number, date of birth, and Social Security number.

124.    In particular, Plaintiff was informed both by Defendant and through his MyIDCare account, which does dark web monitoring, that his PII (including his name, address, date of birth, social security number, address, phone number) was

compromised.

125.    Plaintiff was informed by MyIDCare that his email address, phone number, and social security number had been illegally traded or sold online.

126.    In addition, Plaintiff has received notification of at least two fraudulent attempts to have credit card accounts set up under his identity.

127.    As a result of the Data Breach, Plaintiff made reasonable efforts to mitigate the impact of the Data Breach, including researching and verifying the legitimacy of the Data Breach and monitoring and remediating attempts to fraudulently open up accounts under his identity.

128.    Plaintiff has spent significant time dealing with the Data Breach—valuable time Plaintiff otherwise would have spent on other activities, including but not limited to work and/or recreation. This time has been lost forever and cannot be recaptured.

129.    Plaintiff has suffered and will continue to suffer actual injury from having his PII compromised as a result of the Data Breach.  Plaintiff's PII has already been stolen and sold or traded, remains unencrypted and available for unauthorized third parties to access and abuse, and remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII.

130.    As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach.

CLASS ACTION COMPLAINT

131.   As a result of the Data Breach, Plaintiff is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

132.   Plaintiff has a continuing interest in ensuring that his PII, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

## V.   CLASS ACTION ALLEGATIONS

133.   Plaintiff brings this action both individually and as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(1), 23(b)(2), and 23(b)(3) against Defendant on Plaintiff's own behalf and on behalf of the Class(es) defined below, to the extent class members from these jurisdictions can be grouped together for purposes of class treatment, and within the applicable limitations periods:

> **THE NATIONWIDE CLASS:** All persons residing in the United States whose PII was accessed and/or acquired by an unauthorized party as a result of the data breach at Defendant in or about March 2024 (collectively, the "Class Members").

> **THE CALIFORNIA CLASS:**  All persons residing in California whose PII was accessed and/or acquired by an unauthorized party as a result of the data breach at Defendant in or about March 2024 (collectively, the "California Class Members").

134.   Excluded from the Class(es) are: (a) any judge or magistrate presiding over this action, and members of their families; (b) Defendant and its employees, officers, directors, and agents; (c) Defendant's legal representatives, assigns, and successors; and (d) all persons who properly execute and file a timely request for exclusion from any Court-approved class.

135.   Plaintiff reserves the right to narrow or expand the foregoing class definitions, or to create or modify subclasses, including state-specific subclasses, as the Court deems necessary.

136.   Plaintiff meets the prerequisites of Rule 23(a) to bring this action on behalf of the Class(es).

## **NUMEROSITY**

137.    While the exact number of class members cannot be determined without discovery, upon information and belief, more than 70 million individuals were impacted by the Data Breach.   Upon information and belief, the Class is identifiable within Defendant's records, and Defendant has already identified those individuals, as evidenced by the fact that Defendant sent them Data Breach notification letters. The Class(es) are therefore so numerous that joinder of all members is impracticable.

## **COMMONALITY AND PREDOMINANCE**

138.    Common questions of law and fact predominate which include, but are not limited to:

   a.   Whether and to what extent Defendant had a duty to protect the PII of Plaintiff and Class Members;

   b.   Whether Defendant had respective duties not to disclose the PII of Plaintiff and Class Members to unauthorized third parties;

   c.   Whether Defendant had respective duties not to use the PII of Plaintiff and Class Members for non-business purposes;

   d.   Whether Defendant failed to adequately safeguard the PII of Plaintiff and Class Members;

   e.   Whether and when Defendant actually learned of the Data Breach;

   f.   Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class Members that their PII had been compromised;

   g.   Whether Defendant violated the law by failing to promptly notify Plaintiff and Class Members that their PII had been compromised;

   h.   Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

   i.   Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

CLASS ACTION COMPLAINT

1. Whether Defendants' practices are an invasion of privacy;

2. Whether Defendants' practices are unfair and/or deceptive;

3. Whether Defendants' conduct was knowing and willful;

4. Whether Defendants' contracts were uniformly misleading in a way;

5. Whether Plaintiff and Class Members are entitled to actual and/or statutory damages, and the measure of such damages; and,

6. Whether Defendants should be enjoined from such conduct in the future.

139.   Defendant engaged in a course of conduct giving rise to the legal rights sought to be enforced by Plaintiff on behalf of himself and all other Class Members. Individual questions, if any, pale in comparison, in both quantity and quality, to the numerous common questions that dominate this action.

## **TYPICALITY**

140.   Plaintiff's claims are typical of the claims of the Classes. Plaintiff, like all Class Members, was exposed to virtually identical conduct and now suffers from the same violations of law as each Class Member.  Plaintiff and Class Members were injured by the same wrongful acts, practices, and omissions committed by Defendants, as described herein. Plaintiff's claims thus arise from the same practices and/or course of conduct that give rise to the claims of all Class Members.

## **ADEQUACY**

141.   Plaintiff will fairly and adequately protect the interests of the Class Members. Plaintiff is an adequate representative of the Classes and has no interest(s) adverse to, or in conflict with, the class(es) they seek to represent. Plaintiff has retained counsel with substantial experience and success in the prosecution of complex customer protection class actions of this nature.

## **SUPERIORITY**

142.   A class action is superior to any other available means for the fair and efficient adjudication of this controversy.  No unusual difficulties are likely to be

1    encountered in the management of this class action.

2    143.   The damages and other financial detriment suffered by Plaintiff and all

3    other Class Members are relatively small compared to the burden and expense that

4    would be required to individually litigate their claims against Defendants. As such, it

5    would be impracticable for Class Members to individually seek redress from

6    Defendants' wrongful conduct. Even if Class Members could afford individual

7    litigation, the court system could not.

8
     144.   Further, individual litigation could potentially result in vastly different
9
     rulings and/or standards of conduct for Defendants. For example, one court may enjoin
10
     Defendants' conduct whereas another may not. The potential for such inconsistent or
11
     contradictory judgments will increase delay, burden, and expense to all parties and the
12
     court system.
13
     145.   Here, the class action device presents far fewer management difficulties
14
     and provides the benefits of single adjudication, economy of scale, and comprehensive
15
     supervision by a single court.  The litigation of the claims brought herein is manageable.
16
     Defendant's uniform conduct, the consistent provisions of the relevant laws, and the
17
     ascertainable identities of Class Members demonstrates that there would be no
18
     significant manageability problems with prosecuting this lawsuit as a class action.
19
                                    ## COUNT I
20
                              **Invasion of Privacy**
21
              **(Plaintiff on behalf of Himself and the Class Members)**
22
     146.   Plaintiff incorporates the foregoing allegations as though fully set forth
23
     herein.
24
     147.   Plaintiff alleges this claim for relief on behalf of himself and all similarly
25
     situated Class Members, both those in California and in other states, the laws of which
26
     do not conflict with California law.
27
     148.   Plaintiff and the Class Members have a right against improper intrusion
28
     into their private affairs.  This includes a right of privacy in their own personal data,

including their PII.  Plaintiff and Class Members had a reasonable expectation of privacy when sharing with PII with Defendant.

149.  Defendant intentionally intruded upon Plaintiff and the Class Members' right in their private affairs by intentionally storing and maintaining their PII in a manner in which it was vulnerable to attack and theft.

150.  Defendant's intrusion was substantial and unreasonable and led to the unwanted exposure of Plaintiff and the Class Members' private information, including PII.

151.  As a direct and proximate result of Defendants' intrusion, Plaintiff and the Class Members have suffered damages including, but not limited to an invasion of their privacy in an amount to be ascertained at trial.

<u>**COUNT II**</u>

**Breach of Implied Contract**

**(Plaintiff on Behalf of Himself and the Class Members)**

152.  Plaintiff incorporates the foregoing allegations as though fully set forth herein.

153.  Plaintiff alleges this claim for relief on behalf of himself and all similarly situated Class Members, both those in California and in other states, the laws of which do not conflict with California law.

154.  Plaintiff and Class Members were required deliver their PII to Defendant as part of the process of obtaining products and/or services from Defendant. Plaintiffs and Class Members paid money, or money was paid on their behalf, to Defendant in exchange for products and/or services.

155.  Defendant solicited, offered, and invited Class Members to provide their PII as part of Defendant's regular business practices. Plaintiffs and Class Members accepted Defendant's offers and provided their PII to Defendant.

156.  Defendant accepted possession of Plaintiffs' and Class Members' PII for the purpose of providing services to Plaintiffs and Class Members.

157.  Plaintiff and the Class entrusted their PII to Defendant. In so doing,

Plaintiff and the Class entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and the Class if their data had been breached and compromised or stolen.

158.   In entering into such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendant's data security practices complied with relevant laws and regulations (including FTC guidelines on data security) and were consistent with industry standards.

159.   Implicit in the agreement between Plaintiff and Class Members and the Defendant to provide PII, was the latter's obligation to: (a) use such PII for business purposes only, (b) take reasonable steps to safeguard that PII, (c) prevent unauthorized disclosures of the PII, (d) provide Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their PII, (e) reasonably safeguard and protect the PII of Plaintiff and Class Members from unauthorized disclosure or uses, (f) retain the PII only under conditions that kept such information secure and confidential.

160.   The mutual understanding and intent of Plaintiff and Class Members on the one hand, and Defendant, on the other, is demonstrated by their conduct and course of dealing.

161.   Upon information and belief, at all relevant times Defendant promulgated, adopted, and implemented written privacy policies whereby it expressly promised Plaintiff and Class Members that it would only disclose PII under certain circumstances, none of which relate to the Data Breach.

162.   Upon information and belief, Defendant further promised to comply with industry standards and to make sure that Plaintiff's and Class Members' PII would remain protected.

163.   Plaintiff and Class Members paid money to Defendant with the reasonable belief and expectation that Defendant would use part of its earnings to obtain adequate

data security. Defendant failed to do so.

164.   Plaintiff and Class Members would not have entrusted their PII to Defendant in the absence of the implied contract between them and Defendant to keep their information reasonably secure.

165.   Plaintiff and Class Members would not have entrusted their PII to Defendant in the absence of their implied promise to monitor their computer systems and networks to ensure that it adopted reasonable data security measures.

166.   Every contract has an implied covenant of good faith and fair dealing, which is an independent duty and may be breached even when there is no breach of a contract's actual and/or express terms.

167.   Plaintiff and Class Members fully and adequately performed their obligations under the implied contracts with Defendant.

168.   Defendant breached the implied contracts it made with Plaintiff and the Class by failing to safeguard and protect their personal information, by failing to delete the information of Plaintiff and the Class once the relationship ended, and by failing to provide adequate notice to hem that personal information was compromised as a result of the Data Breach.

169.   Defendant breached the implied covenant of good faith and fair dealing by failing to maintain adequate computer systems and data security practices to safeguard PII, failing to timely and accurately disclose the Data Breach to Plaintiff and Class Members and continued acceptance of PII and storage of other personal information after Defendant knew, or should have known, of the security vulnerabilities of the systems that were exploited in the Data Breach.

170.   As a direct and proximate result of Defendant's breach of the implied contracts, Plaintiff and Class Members sustained damages, including, but not limited to: invasion of privacy; theft of their PII; uncompensated lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; loss of benefit of the bargain; lost opportunity costs associated with attempting to mitigate

the actual consequences of the Data Breach; (vii) statutory damages; nominal damages; and the continued and certainly increased risk to their PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII.

171.   Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach.

172.   Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, e.g., (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members.

## COUNT III

### Unjust Enrichment

### (Plaintiff on Behalf of Himself and the Class Members)

173.   Plaintiff incorporates the foregoing allegations as though fully set forth herein.

174.   Plaintiff alleges this claim for relief on behalf of himself and all similarly situated Class Members, both those in California and in other states, the laws of which do not conflict with California law.

175.   Plaintiff brings this Count in the alternative to the Breach of Contract count set forth above.

176.   Plaintiff and Class Members conferred a monetary benefit on Defendant. Specifically, they paid Defendant and/or its agents for products and/or services and in so doing also provided Defendant with their PII. In exchange, Plaintiff and Class Members should have received from Defendant the products and/or services that were the subject of the transaction and should have had their PII protected with adequate data security.

177.   Defendant knew that Plaintiff and Class Members conferred a benefit upon

CLASS ACTION COMPLAINT

1  it and has accepted and retained that benefit by accepting and retaining the PII entrusted

2  to it. Defendant profited from Plaintiff's retained data and used Plaintiff's and Class

3  Members' PII for business purposes.

4      178.   Defendant failed to secure Plaintiff's and Class Members' PII and,

5  therefore, did not fully compensate Plaintiff or Class Members for the value that their

6  PII provided.

7      179.   Defendant acquired the PII through inequitable record retention as it failed

8  to investigate and/or disclose the inadequate data security practices previously alleged.

9  If Plaintiff and Class Members had known that Defendant would not use adequate data

10  security practices, procedures, and protocols to adequately monitor, supervise, and

11  secure their PII, they would have entrusted their PII at Defendant or obtained products

12  and/or services with Defendant.

13      180.   Plaintiff and Class Members have no adequate remedy at law.

14      181.   Under the circumstances, it would be unjust for Defendant to be permitted

15  to retain any of the benefits that Plaintiff and Class Members conferred upon it.

16      182.   As a direct and proximate result of Defendant's conduct, Plaintiff and

17  Class Members have suffered and will suffer injury, including but not limited to:

18  invasion of privacy; theft of their PII; uncompensated lost time and opportunity costs

19  associated with attempting to mitigate the actual consequences of the Data Breach; loss

20  of benefit of the bargain; lost opportunity costs associated with attempting to mitigate

21  the actual consequences of the Data Breach; statutory damages; nominal damages; and

22  (ix) the continued and certainly increased risk to their PII, which: (a) remains

23  unencrypted and available for unauthorized third parties to access and abuse; and (b)

24  remains backed up in Defendant's possession and is subject to further unauthorized

25  disclosures so long as Defendant fails to undertake appropriate and adequate measures

26  to protect the PII.

27      183.   Plaintiff and Class Members are entitled to full refunds, restitution, and/or

28  damages from Defendant and/or an order proportionally disgorging all profits, benefits,

and other compensation obtained by Defendant from its wrongful conduct. This can be accomplished by establishing a constructive trust from which the Plaintiff and Class Members may seek restitution or compensation.

184.   Plaintiff and Class Members may not have an adequate remedy at law against Defendant, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

185.   Plaintiff incorporates the foregoing allegations as though fully set forth herein.

## COUNT IV

### California's Constitutional Right to Privacy

### (Plaintiff on Behalf of Himself and the California Subclass Members)

187.   Plaintiff incorporates the foregoing allegations as though fully set forth herein.

188.   Plaintiff and the California Subclass Members have reasonable expectations of privacy in PII. Plaintiff's and California Subclass Members' private affairs include their PII.

189.   Defendants intentionally intruded on and into Plaintiff's and California Subclass Members' solitude, seclusion, right of privacy, or private affairs by intentionally collecting their PII with the knowledge that that PII would be stored unencrypted and susceptible to theft.

190.   These intrusions are highly offensive to a reasonable person, because they disclosed sensitive and confidential information, constituting an egregious breach of social norms.

191.   Plaintiff and the California Subclass Members were harmed by the intrusion into their private affairs as detailed throughout this Complaint.

192.   Defendants' actions and conduct complained of herein were a substantial factor in causing the harm suffered by Plaintiff and California Subclass Members.

193.   As a result of Defendants' actions, Plaintiff and California Subclass

Members seek damages and punitive damages in an amount to be determined at trial. Plaintiff and California Subclass Members seek punitive damages because Defendants' actions—which were malicious, oppressive, and willful—were calculated to injure Plaintiff and California Subclass Members and were made in conscious disregard of Plaintiff's and California Subclass Members' rights.

194.    Punitive damages are warranted to deter Defendants from engaging in future misconduct.

## **COUNT V**

### **California's Consumer Legal Remedies Act ("CLRA"),**

### **Cal. Civ. Code § 1750, et seq.**

### **(Plaintiff and the California Subclass Members v. All Defendants)**

195.    Plaintiff incorporates the foregoing allegations as though fully set forth herein.

196.    Defendant is a "person," under Cal. Civ. Code § 1761(c).

197.    Plaintiff is a "consumer[]," as defined by Cal. Civ. Code § 1761(d), who purchased or leased a vehicle whose location data was collected by Defendants.

198.    Defendants' conduct, as described herein, violates the CLRA. Specifically, Defendants violated the CLRA by omitting material facts and failing to disclose their data collection and transmission practices and engaging in the practices proscribed by Cal. Civ. Code § 1770(a) in transactions that were intended to result in, and did result in, the collection and dissemination of Plaintiff's and Class Members' location data. Such practices include but are not limited to:

- Representing to Plaintiff and Class Members that it would only disclose PII under certain circumstances, none of which relate to the Data Breach; and

- Representing that when Plaintiffs shared their PII with Defendant, Defendant employed the necessary data security to protect the PII, when in fact, Defendant did not provide the expected data security.

199.    Defendant violated the CLRA by selling goods and services consumers

CLASS ACTION COMPLAINT

that while knowing that they collected PII that was likely to be transmitted to bad actors.

200.    Defendant omitted from Plaintiff and other California Subclass Members the material fact that when their goods and services sold to Plaintiffs, Plaintiffs PII was susceptible of being stolen and transmitted to bad actors. This is a fact that a reasonable consumer would consider important in selecting a vehicle to purchase or lease.

201.    Defendant knew, at the time they sold Plaintiff and California Subclass Members their goods and services, of the material fact that Plaintiff and the California Subclass Members' PII that was provided to Defendant as a condition of the transaction would be stored unencrypted and was susceptible to theft and transmission to bad actors. Defendant's conduct was fraudulent, wanton, and malicious.

202.    Defendant's unfair and deceptive acts or practices were the foreseeable and actual cause of Plaintiff and other California Subclass Members suffering actual damage.

203.    Plaintiff and the other California Subclass Members paid for goods and services that were supposed to meet certain specifications. When they received goods and services that did not conform to these specifications, i.e., when they came at the cost of losing their PII to bad actors and facing a lifetime threat of identity theft, those goods and services fell below the standards set by and described in Defendants' representations, and Plaintiff and the other California Subclass Members were damaged on account of having their privacy invaded; their PII transmitted to third parties; and paying more than they would have for Defendant's goods and services had they known what they know now.

204.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: invasion of privacy; theft of their PII; uncompensated lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; loss of benefit of the bargain; lost opportunity costs associated with attempting to mitigate the actual

consequences of the Data Breach; statutory damages; nominal damages; and (ix) the continued and certainly increased risk to their PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII.

205.    Pursuant to § 1782 of the CLRA, Plaintiff notified Defendants in writing by mail of the particular violations of § 1770 of the CLRA and demanded that Defendants rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendants' intent to so act. Plaintiff sent his notice letter on April 15, 2024.

206.    If Defendants fail to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant § 1782 of the Act, Plaintiff will amend this Complaint to add claims for actual, punitive, and statutory damages, as appropriate.

207.    Pursuant to § 1780(d) of the Act, attached hereto as Exhibit A is the affidavit showing that this action has been commenced in the proper forum.

## <u>COUNT VI</u>

### California's Unfair Competition Law ("UCL"), California Business & Professions Code § 17200, et seq.

### (Plaintiff on behalf of Himself and the California Subclass Members)

208.    Plaintiff incorporates the foregoing allegations as though fully set forth herein.

209.    The UCL prohibits any "unlawful," "fraudulent," or "unfair" business act or practice and any false or misleading advertising. In the course of conducting business, Defendants committed "unlawful" business practices by, among other things, making the representations and omissions of material facts, as set forth more fully herein, and violating Civil Code §§ 1572, 1573, 1709, 1711, 1770(a)(5), (6), (7), (9), and (16), and Business & Professions Code §§ 17200, et seq., 17500, et seq., and the common law.

210.   In the course of conducting business, Defendants committed "unfair" business practices by, among other things, making promises and representations to appellants that it would protect its customers' PII from disclosure to unauthorized third parties.

211.   Plaintiffs and the California Subclass Members relied on Defendant's false representations and promises when entering contracts with Defendant to acquire goods and services and accepting Defendant's terms.

212.   Plaintiff and Class Members received products and/or services that were of a lesser value than what they reasonably expected to receive under the bargains they struck with Defendant.

213.   Defendant misrepresented and omitted material facts regarding the characteristics, capabilities, and benefits of services they provided, including the fact that Plaintiff and the California Subclass Members' PII was stored unencrypted and susceptible to theft and use by bad actors. There is no societal benefit from such false and misleading representations and omissions, only harm.

214.   While Plaintiff and other California Subclass Members were harmed by this conduct, Defendants were unjustly enriched. As a result, Defendants' conduct is "unfair" as it has offended an established public policy. Further, Defendants engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

215.   Defendant  knew or should have known at the time that it sold goods and services to Plaintiffs and California Subclass Members that that the PII that they collected and maintained would be targeted by cybercriminals.

216.   Plaintiff alleges violations of consumer protection, unfair competition, and truth in advertising laws in California, resulting in harm to consumers. Defendants' acts and omissions also violate and offend the public policy against engaging in false and misleading advertising, unfair competition, and deceptive conduct towards consumers. This conduct constitutes violations of the UCL's "unfair" prong. There were

CLASS ACTION COMPLAINT

reasonably available alternatives to further Defendants' legitimate business interests other than the conduct described herein.

217.   The UCL also prohibits any "fraudulent business act or practice." In the course of conducting business, Defendants committed "fraudulent business act[s] or practices" by, among other things, making the representations and omissions of material facts regarding the safety and security of Plaintiff's and California Subclass Members' PII.

218.   Defendants' actions, claims, omissions, and misleading statements, as more fully set forth above, were also false, misleading, and likely to deceive the consuming public within the meaning of the UCL.

219.   Plaintiff and California Class Members were deceived as a result of their reliance on Defendants' material representations and omissions, which are described above. Plaintiff and other California Subclass members suffered injury in fact and lost money as a result of purchasing deceptively advertised goods and services by having their privacy invaded; their PII collected and transmitted to third parties; paying more than they would have for Defendant's goods and services had they know what they now; and incurring other consequential inconvenience, aggravation, damages, and loss of money and time.

220.   Unless restrained and enjoined, Defendants will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate.

221.   Plaintiff, on behalf of himself and all others similarly situated, seeks restitution from Defendants of all money obtained from Plaintiff and the other members of the California Subclass collected as a result of unfair competition, an injunction prohibiting Defendants from continuing such practices, corrective advertising, and all other relief this Court deems appropriate, consistent with Business & Professions Code § 17203.

/ / /

/ / /

# COUNT VII

## Negligence

### (Plaintiff on behalf of Himself and the Class Members)

222.  Plaintiff incorporates the foregoing allegations as though fully set forth herein.

223.  Plaintiff alleges this claim for relief on behalf of himself and all similarly situated Class Members, both those in California and in other states, the laws of which do not conflict with California law.

224.  Defendant requires its customers, including Plaintiff and Class Members, to submit non-public PII in the ordinary course of providing its products and/or services.

225.  Defendant gathered and stored the PII of Plaintiff and Class Members as part of its business of soliciting its services to its customers, which solicitations and services affect commerce.

226.  Plaintiff and Class Members entrusted Defendant with their PII with the understanding that Defendant would safeguard their information.

227.  Defendant had full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and Class Members could and would suffer if the PII were wrongfully disclosed.

228.  By voluntarily undertaking and assuming the responsibility to collect and store this data, and in fact doing so, and sharing it and using it for commercial gain, Defendant had a duty of care to use reasonable means to secure and safeguard their computer property—and Class Members' PII held within it—to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duty included a responsibility to implement processes by which they could detect a breach of its security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach.

/ / /

/ / /

229.   Defendant had a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

230.   Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks adequately protected the PII.

231.   Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between AT&T and Plaintiff and Class Members. That special relationship arose because Plaintiff and the Class entrusted AT&T with their confidential PII, a necessary part of being customers of Defendant.

232.   Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential PII.

233.   Defendant was subject to an "independent duty," untethered to any contract between Defendant and Plaintiff or the Class.

234.   Defendant also had a duty to exercise appropriate clearinghouse practices to remove former customers' PII it was no longer required to retain pursuant to regulations.

235.   Moreover, Defendant had a duty to promptly and adequately notify Plaintiff and the Class of the Data Breach.

236.   Defendant had and continues to have a duty to adequately disclose that the PII of Plaintiff and the Class within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiff and the Class to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their PII by third parties.

237.    Defendant breached its duties, pursuant to the FTC Act and other applicable standards, and thus was negligent, by failing to use reasonable measures to protect Class Members' PII. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

   a.   Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' PII;

   b.   Failing to adequately monitor the security of their networks and systems;

   c.   Allowing unauthorized access to Class Members' PII;

   d.   Failing to detect in a timely manner that Class Members' PII had been compromised;

   e.   Failing to remove former customers' PII it was no longer required to retain pursuant to regulations, and

   f.   Failing to timely and adequately notify Class Members about the Data Breach's occurrence and scope, so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

238.    Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards, as described in detail herein.

239.    Defendant's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

240.    Plaintiff and Class Members were within the class of persons the FTC Act was intended to protect and the type of harm that resulted from the Data Breach was the type of harm that the statute was intended to guard against.

241.    Defendant's violation of Section 5 of the FTC Act constitutes negligence. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive

practices, caused the same harm as that suffered by Plaintiff and the Class.

242.   A breach of security, unauthorized access, and resulting injury to Plaintiff and the Class was reasonably foreseeable, particularly in light of Defendant's inadequate security practices.

243.   It was foreseeable that Defendant's failure to use reasonable measures to protect Class Members' PII would result in injury to Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches in the telecom industry.

244.   Defendant has full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and the Class could and would suffer if the PII were wrongfully disclosed. Plaintiff and the Class were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing the PII of Plaintiff and the Class, the critical importance of providing adequate security of that PII, and the necessity for encrypting PII stored on Defendant's systems or transmitted through third party systems.

245.   It was therefore foreseeable that the failure to adequately safeguard Class Members' PII would result in one or more types of injuries to Class Members.

246.   Plaintiff and the Class had no ability to protect their PII that was in, and possibly remains in, Defendant's possession.

247.   Defendant was in a position to protect against the harm suffered by Plaintiff and the Class as a result of the Data Breach.

248.   Defendant's duty extended to protecting Plaintiff and the Class from the risk of foreseeable criminal conduct of third parties, which has been recognized in situations where the actor's own conduct or misconduct exposes another to the risk or defeats protections put in place to guard against the risk, or where the parties are in a special relationship. See Restatement (Second) of Torts § 302B. Numerous courts and

legislatures have also recognized the existence of a specific duty to reasonably safeguard personal information.

249.    But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and the Class, the PII of Plaintiff and the Class would not have been compromised.

250.    There is a close causal connection between Defendant's failure to implement security measures to protect the PII of Plaintiff and the Class and the harm, or risk of imminent harm, suffered by Plaintiff and the Class. The PII of Plaintiff and the Class was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such PII by adopting, implementing, and maintaining appropriate security measures.

251.    As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: invasion of privacy; theft of their PII; uncompensated lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; loss of benefit of the bargain; lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; statutory damages; nominal damages; and the continued and certainly increased risk to their PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII.

252.    Additionally, as a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will suffer the continued risks of exposure of their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII in its continued possession.

253.    Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

CLASS ACTION COMPLAINT

254.   Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to all Class Members.

## COUNT VIII

### Negligence *Per Se*

**(Plaintiff on Behalf of Himself and all Class Members)**

255.   Plaintiff incorporates the foregoing allegations as though fully set forth herein.

256.   Plaintiff alleges this claim for relief on behalf of himself and all similarly situated Class Members, both those in California and in other states, the laws of which do not conflict with California law.

257.   Pursuant to the Federal Trade Commission Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' PII.

258.   Defendant breached its duties to Plaintiff and Class Members under the Federal Trade Commission Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' PII.

259.   Defendant's failure to comply with applicable laws and regulations constitutes negligence per se.

260.   But for Defendant's wrongful and negligent breach of their duties owed to Plaintiff and Class Members, Plaintiff and Class Members would not have been injured.

261.   The harm resulting from the Data Breach was the harm the FTC Act was intended to guard against, and Plaintiff and Class Members are within the class of persons the statute was intended to protect.

262.   The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendant's breach of their duties. Defendant knew or

should have known that it was failing to meet its duties, and that Defendant's breach would cause Plaintiff and Class Members to experience the foreseeable harms associated with the exposure of their PII.

263.    As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class Members have suffered injury and are entitled to compensatory, consequential, and punitive damages in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

Plaintiff, individually and on behalf of all other Class Members, pray for the following relief that:

1.    Certifies this action as a Class Action with the Classes requested above, designates the Plaintiff as the Class Representative, and appoints the undersigned counsel as Class Counsel;

2.    Declares that Defendant is liable on the causes of action above;

3.    Awards Plaintiff and the Class Members with monetary relief, including actual damages, statutory damages, and punitive damages;

4.    Awards Plaintiff and the Class Members restitution and disgorgement;

5.    Awards Plaintiff and the Class Members exemplary damages, should the finder of fact determine that Defendants acted with malice or oppression;

6.    Awards Plaintiff and the Class Members with pre-judgment and post-judgment interest to the maximum extent allowable;

7.    Awards Plaintiff and the Class Members injunctive and all other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an order:

a.  prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

b.  requiring Defendant to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

CLASS ACTION COMPLAINT

c.  requiring Defendant to delete, destroy, and purge the PII of Plaintiff and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

d.  requiring Defendant to provide out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII for Plaintiff's and Class Members' respective lifetimes;

e.  requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the PII of Plaintiff and Class Members;

f.  prohibiting Defendant from maintaining the PII of Plaintiff and Class Members on a cloud-based database;

g.  requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

h.  requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

i.  requiring Defendant to audit, test, and train its security personnel regarding any new or modified procedures;

j.  requiring Defendant to segment data by, among other things, creating firewalls and controls so that if one area of Defendant's network is compromised, hackers cannot gain access to portions of Defendant's systems;

k.  requiring Defendant to conduct regular database scanning and security checks;

l.  requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the PII of Plaintiff and Class Members;

m. requiring Defendant to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

n. requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

o. requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

p. requiring Defendant to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect himself;

q. requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and

r. for a period of 10 years, appointing a qualified and independent third party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment.

8. Awards Plaintiff and the Class Members with reasonable attorneys' fees, expert witness fees, costs, and expenses; and

9. Awards Plaintiff and the Class Members with such other relief as allowable under law.

/ / /

/ / /

/ / /

1

## <u>**JURY DEMAND**</u>

2      Plaintiff respectfully requests a trial by jury on all causes of action so triable.

3

4    Dated: May 3, 2024                    Respectfully Submitted,

5                                          <u>/s/ Kiley L. Grombacher</u>
                                           Kiley L. Grombacher, Esq. (SBN 245960)
6                                          **BRADLEY/GROMBACHER LLP**
7                                          31365 Oak Crest Drive, Suite 240
                                           Westlake Village, California 91361
8                                          Telephone: 805-270-7100
                                           Facsimile:  805-270-7589
9                                          E-Mail:  kgrombacher@bradleygrombacher.com
10

11                                         Attorneys for Plaintiff and the proposed Class.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT